Slip Op. 19–108

## UNITED STATES COURT OF INTERNATIONAL TRADE

|  |  |
|---|---|
| OMAN FASTENERS, LLC, | : |
| Plaintiff, | : |
| v. | : Before: Richard K. Eaton, Judge |
| UNITED STATES, | : Court No. 18-00244 |
| Defendant, | : |
| and | : |
| MID CONTINENT STEEL & WIRE, INC., | : |
| Defendant-Intervenor. | : |

## <u>MEMORANDUM OPINION</u>

[Defendant's motion to dismiss for lack of subject-matter jurisdiction is denied; Plaintiff's unopposed motion to consolidate is granted.]

Dated:  August 8, 2019

*Michael P. House*, Perkins Coie, LLP of Washington, DC, for Plaintiff.

*Sosun Bae*, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, DC, for Defendant. With her on the brief were *Joseph H. Hunt*, Acting Assistant Attorney General, *Jeanne E. Davidson*, Director, and *Patricia M. McCarthy*, Assistant Director. Of Counsel on the brief was *Kristen McCannon*, Attorney, Office of the Chief Counsel for Trade Enforcement and Compliance, U.S. Department of Commerce, of Washington, DC.

*Adam H. Gordon* and *Ping Gong*, The Bristol Group PLLC of Washington, DC, for Defendant-Intervenor.

Eaton, Judge: Plaintiff Oman Fasteners, LLC ("Plaintiff" or "Oman Fasteners")

commenced this action to challenge certain aspects of the final results of the United States

Department of Commerce's ("Commerce" or the "Department") second administrative review of

the antidumping duty order on certain steel nails from the Sultanate of Oman. *See Certain Steel Nails From the Sultanate of Oman*, 83 Fed. Reg. 58,231 (Dep't Commerce Nov. 19, 2018) ("Final Results"); *see also Certain Steel Nails From the Rep. of Korea, Malay., the Sultanate of Oman, Taiwan, and the Socialist Rep. of Viet.*, 80 Fed. Reg. 39,994 (Dep't Commerce July 13, 2015) ("Order"). Plaintiff was a mandatory respondent in that review and received a zero percent weighted-average dumping margin.

The Final Results are also the subject of a separate lawsuit, commenced by Mid Continent Steel & Wire, Inc., a U.S. manufacturer of the domestic like product, captioned *Mid Continent Steel & Wire, Inc. v. United States*, Court No. 18-00235 ("*Mid Continent*"). Oman Fasteners is a defendant-intervenor in the *Mid Continent* case. *Mid Continent* is stayed pending the final resolution of an appeal currently before the Court of Appeals for the Federal Circuit, *Mid Continent Steel & Wire, Inc. v. United States*, Court No. 2018-1250 (appeal filed Dec. 4, 2017) ("Appeal").[1]

Before the court are two motions: (1) the motion of Defendant the United States ("Defendant") to dismiss Oman Fasteners' complaint for lack of subject-matter jurisdiction, pursuant to Rule 12(b)(1),[2] and (2) Oman Fasteners' motion to consolidate[3] this action with the *Mid Continent* case, pursuant to Rule 42(a). *See* Def.'s Mot. Dismiss, ECF No. 30 ("Def.'s Mot.");

---

[1]        The Appeal is a review of this Court's decision sustaining the Department's final affirmative less-than-fair-value determination concerning steel nails from the Sultanate of Oman. *See Mid Continent Steel & Wire, Inc. v. United States*, 41 CIT __, 273 F. Supp. 3d 1348 (2017) (sustaining final less-than-fair-value determination after remand).

[2]        Rule 12(b)(1) provides in part that a party may assert certain defenses by motion, including lack of subject-matter jurisdiction. *See* U.S. Ct. Int'l Trade R. 12(b)(1).

[3]        Defendant does not oppose Plaintiff's motion should the court deny the motion to dismiss. *See* Pl.'s Unopposed Mot. Consolidate and Stay, ECF No. 39 at 2.

Def.'s Reply Br. Supp. Mot. Dismiss, ECF No. 36 ("Def.'s Reply"); *see also* Pl.'s Unopposed

Mot. Consolidate and Stay, ECF No. 39 ("Pl.'s Mot.").

By its motion to dismiss, Defendant claims that Oman Fasteners lacks constitutional

standing to bring a lawsuit challenging the Final Results, for the sole reason that it received a zero

percent margin in the administrative review. *See generally* Def.'s Mot. Because of the zero percent

margin, Defendant contends, Oman Fasteners "cannot demonstrate that it has suffered an injury in

fact." Def.'s Mot. 2; *see also* U.S. CONST. art. III, § 2, cl. 1.

Plaintiff opposes the motion to dismiss, maintaining that it has alleged sufficient injury for

constitutional standing purposes, namely, "a concrete procedural injury—the potential for

permanent loss of its right to challenge Commerce determinations that Oman Fasteners believes

were unlawful." Pl.'s Opp'n Def.'s Mot. Dismiss, ECF No. 35 at 6 ("Pl.'s Opp'n"). Specifically,

notwithstanding its zero percent margin, Oman Fasteners disputes certain of Commerce's

determinations as unsupported by substantial evidence and otherwise not in accordance with law.

Since its claims are beyond the scope of issues in the *Mid Continent* complaint, however, Oman

Fasteners cannot raise them as defendant-intervenor in that action. *See* Pl.'s Resp. Ct. Order, ECF

No. 41 at 3-4 (quoting, *inter alia*, *Vinson v. Wash. Gas Light Co.*, 321 U.S. 489, 498 (1944)). Thus,

by commencing this action, Plaintiff seeks to "ensure that it is afforded due process to present its

arguments with respect to [those allegedly unlawful] determinations underlying the Final

Results . . . ." Pl.'s Opp'n 3. For Plaintiff, unless it is permitted to bring its claims in this action, it

may only get the chance in a separate, expensive lawsuit, or not at all. Thus, Plaintiff asks the court

to deny Defendant's motion to dismiss.

Plaintiff's consolidation motion asks the court to consolidate this case with *Mid Continent*.

Plaintiff asserts that judicial economy favors consolidation because both the *Mid Continent* case

and this action dispute aspects of the same Final Results, and some issues in the Appeal (pending

the resolution of which *Mid Continent* is stayed) overlap with Plaintiff's claims in this action. *See*

Pl.'s Mot. 2-3 (arguing that consolidation and stay are appropriate because this action and *Mid*

*Continent* "concern the same underlying administrative determination," *i.e.*, "each of the two

actions is predicated on the identical underlying agency administrative record, the actions

challenge various aspects of the same administrative determination which is based on that record,

and the actions involve the same parties."); Pl.'s Mot. 3 ("The Appeal [before the Federal Circuit]

will . . . likely dispose of at least one of three issues raised" in the complaint in this action, *i.e.*,

"whether . . . Commerce's decision not to calculate, or attempt to calculate, a profit rate cap . . . is

supported by substantial evidence and in accordance with law.").

For the reasons below, the court denies Defendant's motion to dismiss, and grants

Plaintiff's motion to consolidate.


## BACKGROUND

Oman Fasteners is a foreign producer, exporter, and U.S. importer of steel nails that are

subject to the Order. *See* Compl., ECF No. 10, ¶ 1. It participated in the second administrative

review of the Order as a mandatory respondent. Compl. ¶ 8.

On November 19, 2018, Commerce published the Final Results, in which it determined a

zero percent weighted-average dumping margin for Oman Fasteners. Compl. ¶ 19.

On November 28, 2018, Mid Continent Steel & Wire, Inc., a U.S. manufacturer of the

domestic like product and Defendant-Intervenor here, commenced the *Mid Continent* case to

challenge the Final Results with respect to (1) Commerce's determination that Oman Fasteners

and its largest U.S. supplier were not affiliated, and (2) Commerce's choice of a Japanese company

as the source of information to construct the value for profit and indirect selling expenses. *See Mid Continent*, Ct. No. 18-00235, Compl., ECF No. 8, ¶¶ 15-26. Should Mid Continent ultimately prevail, a natural result would be a positive dumping margin for Oman Fasteners.

On December 19, 2018, Oman Fasteners filed the complaint, alleging that this Court has jurisdiction under 28 U.S.C. § 1581(c) (2012) and 19 U.S.C. § 1516a(a)(2)(A)(i)(I) and (B)(iii) (2012), and that Plaintiff had standing as an "interested party" as defined in 19 U.S.C. § 1677(9)(A). Compl. ¶¶ 4, 5. In its complaint, Oman Fasteners alleges three claims: (1) "Commerce's failure to calculate, or attempt to calculate, a profit rate cap as expressly required by statute is unsupported by substantial evidence and contrary to law," Compl. ¶ 22 (Count I); (2) "Commerce's failure to base [constructed value] ratios on a home market source in this review is unsupported by substantial evidence and contrary to law," Compl. ¶ 24 (Count II); (3) "Commerce's application of its so-called 'differential pricing' methodology in this review is unsupported by substantial evidence and contrary to law." Compl. ¶ 26 (Count III). Plaintiff asks the court to "enter judgment holding unlawful the decisions of Commerce identified [in the complaint]; [and] remand this matter to Commerce for a re-determination consistent with the [court's] holding." Compl. ¶ 27. So, as Mid Continent does in its case, Oman Fasteners, too, seeks to challenge aspects of the Final Results.

On December 20, 2019, the day after commencing this action, Oman Fasteners moved to intervene as of right, pursuant to Rule 24(a), as defendant-intervenor in *Mid Continent*. The court granted that motion. *See Mid Continent*, Ct. No. 18-00235, Order dated Dec. 20, 2019, ECF No. 19.

On February 6, 2019, Defendant moved to dismiss this action. *See* Def.'s Mot.

On April 1, 2019, Plaintiff moved to consolidate this action with *Mid Continent*. *See* Pl.'s

Mot.

On April 23, 2019, the court ordered Oman Fasteners to submit a statement explaining,

"with specificity, how [it] will be prevented from raising the exact same issues in [*Mid Continent*,]

Court No. 18-00235, that it has sought to raise in this case," and afforded Defendant an opportunity

to submit a response. Order dated Apr. 23, 2019, ECF No. 40. The parties timely filed their

respective statements. *See* Pl.'s Resp. Ct. Order; Def.'s Resp. Pl.'s Submission Resp. Ct. Order,

ECF No. 42.


## STANDARD OF REVIEW

Whether this Court may exercise subject-matter jurisdiction over the claims asserted in a

complaint is a threshold inquiry. "The requirement that jurisdiction be established as a threshold

matter springs from the nature and limits of the judicial power of the United States and is inflexible

and without exception." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94-95 (1998) (citation

omitted). In deciding a Rule 12(b)(1) motion to dismiss for lack of subject-matter jurisdiction, the

court is "obligated to assume all factual allegations to be true and to draw all reasonable inferences

in plaintiff's favor." *Henke v. United States*, 60 F.3d 795, 797 (Fed. Cir. 1995) (citations omitted).


## DISCUSSION

"[J]urisdiction is a question of whether a federal court has the power, under the Constitution

or laws of the United States, to hear a case." *Davis v. Passman*, 442 U.S. 228, 239 n.18 (1979)

(citations and emphasis omitted). This power is circumscribed by Article III of the U.S.

Constitution, which limits the jurisdiction of the federal courts to "cases" and "controversies." U.S.

CONST. art. III, § 2, cl. 1 ("The judicial Power shall extend to all Cases, in Law and Equity, arising under this Constitution, [or] the Laws of the United States . . . ; [and] to Controversies to which the United States shall be a Party."). "One essential aspect of [the] requirement [of jurisdiction] is that any person invoking the power of a federal court must demonstrate standing to do so." *Va. House of Delegates v. Bethune-Hill*, 587 U.S. __, __, 139 S. Ct. 1945, 1950 (2019) (citation omitted). "[S]tanding is a question of whether a plaintiff is sufficiently adversary to a defendant to create an Art. III case or controversy, or at least to overcome prudential limitations on federal-court jurisdiction." *Davis*, 442 U.S. at 239 n.18 (citation and emphasis omitted). "The three elements of standing . . . are (1) a concrete and particularized injury, that (2) is fairly traceable to the challenged conduct, and (3) is likely to be redressed by a favorable decision." *Va. House of Delegates*, 587 U.S. at __, 139 S. Ct. at 1950 (citation omitted).

Injury in fact is one of the three elements that must be present before a plaintiff can be found to have constitutional standing. Though often stated as requiring a "concrete and particularized" injury, economic harm is not a standing requirement. *See Sierra Club v. Morton*, 405 U.S. 727, 734 (1972); *see also Lujan v. Defs. of Wildlife*, 504 U.S. 555, 582 (1992) (Stevens, J., concurring) ("[T]his Court has often held that injuries to . . . interests [such as "esthetic enjoyment, an interest in professional research, or an economic interest in preservation of the species"], are sufficient to confer standing."). In other words, the absence of economic harm does not foreclose a finding of a cognizable injury for constitutional standing purposes.

Neither does the requirement of a "concrete and particularized" injury mean that injury must be suffered prior to the institution of suit. In certain situations the prospect of potential future injury will suffice. For instance, the Supreme Court has held that a plaintiff could maintain an action to establish, as a matter of record, title to real property that had been acquired through

adverse possession, and to enjoin the defendants from asserting title to the same property. The

defendants in that action (1) were unaware that they might have a claim to the real property, (2) had

never sought to assert a claim to it, and (3) had evidenced no intent to ever assert a claim. *See*

*Sharon v. Tucker*, 144 U.S. 533, 536, 543 (1892).

For guidance on when the claimed injury is too remote to be justiciable, courts often turn

to *Lujan v. Defenders of Wildlife*:

> When the suit is one challenging the legality of government action or inaction, the
> nature and extent of facts that must be averred (at the summary judgment stage) or
> proved (at the trial stage) in order to establish standing depends considerably upon
> whether the plaintiff is himself an object of the action (or forgone action) at issue.
> If he is, there is ordinarily little question that the action or inaction has caused him
> injury, and that a judgment preventing or requiring the action will redress it. When,
> however, as in this case, a plaintiff's asserted injury arises from the government's
> allegedly unlawful regulation (or lack of regulation) of *someone else*, much more
> is needed.

504 U.S. 555, 561-62 (1992). The essence of *Lujan*, then, was that when the government is sued

to force it to take action (or to challenge an action taken), the plaintiff is required to demonstrate

some sort of personal harm for standing to be found. The *Lujan* Court found no standing to

challenge a regulation relating to endangered species in foreign lands, when the plaintiffs' only

connection to those animals was that they had seen similar animals once, and might travel to see

them again. Although decided based on standing, *Lujan* is usually read as touching on a mixture

of the proper separation of executive and judicial power, the political question doctrine, and other

concerns relating to justiciability.[4] Thus, while setting out the standing requirements in a general

---

[4]     Justiciability encompasses the doctrines of standing, mootness, ripeness, and
political question. *See Fisher v. United States*, 402 F.3d 1167, 1176 (Fed. Cir. 2005). These
concerns were touched upon in the recent cases of *Department of Commerce v. New York*, 588
U.S. __, 139 S. Ct. 2551 (2019) and *Trump v. Sierra Club*, 588 U.S. __, 2019 WL 3369425 (2019).

way, *Lujan* is of limited use when determining who has standing in the unfair trade cases typically before this Court.

More useful guidance can be found in cases dealing with commercial disputes, including the long line of cases resulting from the Declaratory Judgment Act of 1934.[5] It is a legal commonplace that, while the Act created a new form of relief (the declaratory judgment), it did not alter any law relating to standing. *See MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 138 (2007) (Thomas, J., dissenting) (citing *Md. Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 272-73 (1941)) ("The Declaratory Judgment Act did not (and could not) alter the constitutional definition of 'case or controversy' or relax Article III's command that an actual case or controversy exist before federal courts may adjudicate a question."). Thus, the law of standing developed for cases brought under the Act applies equally to the case now before the court.

Chief Justice Hughes wrote the first Supreme Court opinion describing what was required for a lawsuit brought under the Declaratory Judgment Act to satisfy the Article III "case or controversy" requirement:

> A "controversy" in this sense must be one that is appropriate for judicial determination. . . . A justiciable controversy is thus distinguished from a difference or dispute of a hypothetical or abstract character; from one that is academic or moot. . . . The controversy must be definite and concrete, touching the legal relations of parties having adverse legal interests. . . . It must be a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts. . . . Where there is such a concrete case admitting of immediate and definitive determination of the legal rights of the parties in an adversary proceeding upon the facts alleged, *the judicial function may be appropriately exercised although the adjudication of the rights of the litigants may not require the award of process or the payment of damages*.

---

[5] While *Lujan* itself was a declaratory judgment case, there is no indication that it overruled the long line of cases decided under the Declaratory Judgment Act.

*Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240-41 (1937) (emphasis added) (citations omitted). The last lines of the quoted language anticipate that cases could be heard settling the rights of the parties with respect to facts that would develop in the future. Justice Hughes does not mention standing but rather speaks in terms of justiciability, which encompasses standing. *See Fisher v. United States*, 402 F.3d 1167, 1176 (Fed. Cir. 2005) (citations omitted) ("Though justiciability has no precise definition or scope, [the] doctrine[] of standing . . . [is] within its ambit.").

Thereafter, matters have regularly been heard in the federal courts where the injury to a party seeking relief might not appear to be either actual or imminent. For instance, many cases have been heard to sort out the rights and liabilities of parties to insurance contracts where only a right to future indemnity was at issue, *i.e.*, where no claim for indemnity had yet been made under the policy (although the insured had been found liable for amounts arguably covered by the policy). *See, e.g.*, *Nestlé Foods Corp. v. Aetna Cas. & Sur. Co.*, 842 F. Supp. 125 (D.N.J. 1993). In a declaratory judgment action involving a patent dispute, the Federal Circuit has found standing, where, although the defendant had not yet charged infringement, it had twice sued the plaintiff for infringing patents on related products, and with respect to the patent at issue had challenged the plaintiff's patent in the U.S. Patent Office and pursued its own competing application. *See Danisco U.S. Inc. v. Novozymes A/S*, 744 F.3d 1325, 1330 (Fed. Cir. 2014) (quoting and citing *MedImmune*, 549 U.S. at 127). Thus, in commercial cases, standing is regularly found where no party has yet suffered a monetary injury.

And so it should be with the dumping and countervailing duty cases brought before this Court. Thus, the court finds that (1) the absence of a positive dumping margin is not a bar to

standing in an antidumping case, and (2) Oman Fasteners has standing to bring its case.[6] The

Defendant's sole argument is that the zero percent dumping margin bars Plaintiff's case. As the

foregoing cases demonstrate, however, there is no constitutional requirement that Plaintiff

demonstrate economic injury to have standing. Nor for that matter is present injury a standing

requirement. Rather, the threat of injury may suffice for standing purposes, so long as it is not

conjectural or hypothetical. *See Defs. of Wildlife, Friends of Animals & Their Env't v. Hodel*, 851

F.2d 1035, 1039 (8th Cir. 1988) (citation omitted) ("A threatened injury may constitute an injury

in fact."); *Shenyang Yuanda Aluminum Indus. Eng'g Co. v. United States*, 918 F.3d 1355, 1364-

65 (Fed. Cir. 2019) (injury in fact test requires "an inquiry into the actual or threatened effect on

the plaintiff of the specific challenged agency action"). Therefore, to the extent Defendant argues

that injury may be shown only by a greater-than-zero-percent margin in the underlying proceeding,

---

[6]          Although Article III standing is jurisdictional, it is unclear if prudential standing is.
*See Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 125-27 (2014).
Nonetheless, it should be noted here. Under the usual description of prudential standing, three
kinds of disputes are barred from being heard by federal courts, *i.e.*, (1) those that involve
generalized grievances, (2) those involving third-party standing, and (3) those outside of the zone
of interest. While important, prudential considerations are not present in this case. Generalized
interests are distinguished from the particularized interests required for standing. Third-party
considerations are centered on the idea that a party may assert only its own rights. By zone of
interest is meant "whether the interest sought to be protected by the complainant is arguably within
the zone of interests to be protected or regulated by the statute or constitutional guarantee in
question." *Ass'n of Data Processing Serv. Orgs.  v. Camp*, 397 U.S. 150, 153 (1970).

its argument is not supported by the law.[7] *See* Def.'s Reply 2 ("Oman Fasteners Has Not And

Cannot Establish Actual Injury").[8]

---

[7]      *Freeport Minerals Co. v. United States*, 758 F.2d 629 (Fed. Cir. 1985) has been cited for the proposition that a positive dumping margin is a prerequisite for a party to have standing to challenge an administrative determination in a dumping case. *See, e.g.*, *Royal Thai Gov't v. United States*, 38 CIT __, __, 978 F. Supp. 2d 1330, 1333 (2014). In *Freeport Minerals*, a domestic producer of sulfur did not immediately challenge in this Court a "notice" issued by Commerce finding no dumping by three foreign producers. Although the notice alerted those concerned that the three companies had not dumped, it left in place the antidumping duty order that contained positive antidumping duty margins for the three companies. When, some time later, the order was revoked, Freeport sued to challenge the revocation. The government argued that Freeport was too late because the findings it sought to challenge had been the subject of the preceding year's notice, and thus its complaint was filed outside the thirty-day period allowed for such challenges.

The Federal Circuit found Freeport Minerals' suit timely and gave several reasons why. First, the Court agreed with Freeport's argument "that it would have made no sense and would have wasted judicial and legal resources" for it to have challenged the earlier notice. *Freeport Minerals*, 758 F.2d at 633. The reason it would have "made no sense" was because the antidumping order remained in place following the notice, apparently as a means to twist the arms of the three foreign producers to encourage the cooperation of a fourth foreign producer. Keeping the order in place was Freeport Minerals' goal. If Freeport sued immediately after issuance of the notice, it risked having the order revoked as a result of its lawsuit. In reaching its finding that Freeport was right not to sue immediately after the notice had been issued, the Court endorsed Freeport's litigation strategy. Second, the Court noted that "[a]s a general rule, the prevailing party in a proceeding may not appeal the proceeding just because he disagrees with some of the findings or reasoning. If this were not so, appellate courts would be swamped with theoretical disputes." *Id.* at 634. Here, the Court seems to be using a public policy argument combined with the desire to avoid issuing advisory opinions. *Freeport Minerals* was, of course, a case that had been heard by the CIT and appealed to the Federal Circuit; it was not, however, the review of an administrative proceeding by this Court. Third, in a footnote, the Court stated, "Perhaps a more apt litigating analogy would be to the final judgment rule, whereby, with certain statutory and judicial exceptions, a party may not appeal a federal district court decision until it is final." *Id.* at 634 n.13 (citation omitted). The Court, thus, suggests that seeking review in the CIT of the notice would be the equivalent of an interlocutory appeal. Finally, the Court observed that the findings in the notice had been mooted by subsequent CIT action, and Commerce's determination on remand. *Id.* at 634.

Thus, the Court found that Freeport did not bring its action out of time. It is worth noting, however, that in none of the Court's common-sense findings did it mention injury or standing or suggest in any way that Article III standing is dependent upon a plaintiff having received a positive dumping margin.

[8]      The cases of *Royal Thai Government v. United States*, 38 CIT __, 978 F. Supp. 2d 1330 (2014), *Zhanjiang Guolian Aquatic Products Co. v. United States*, 38 CIT __, 991 F. Supp. 2d 1339 (2014), *Jubail Energy Services Co. v. United States*, 39 CIT __, 125 F. Supp. 3d 1352

Moreover, the court finds that Oman Fasteners has standing to bring its case for reasons both legal and practical.

First, the record and the Final Results challenged by Plaintiff are now before the court in *Mid Continent*.

Second, Plaintiff is in the *Mid Continent* case as a defendant-intervenor, and Oman Fasteners' status as an intervenor (although an intervenor that may not expand the issues in the complaint) argues in favor of its being granted standing here.

Third, as noted above, at least one of the claims raised in Plaintiff's complaint is currently pending before the Federal Circuit in the Appeal. To the extent the Federal Circuit rules on the overlapping issues, Plaintiff's claims may be resolved one way or another by the Appeal and can be included in the judgment in its case.

Fourth, it is likely that unless Plaintiff is permitted to pursue the claims in its complaint through this action, it will never have the opportunity to do so in the context of *Mid Continent*. Plaintiff is correct that it could not bring crossclaims in *Mid Continent* (as a defendant-intervenor) based on its claims in this case because doing so "would have impermissibly expanded the scope of [*Mid Continent*] beyond the issues raised by Mid Continent's complaint." Pl.'s Resp. Ct. Order at 3-4 (quoting, *inter alia*, *Vinson*, 321 U.S. at 498) ("[O]ne of the most usual procedural rules is that an intervenor is admitted to the proceeding as it stands, and in respect of the pending issues, but it is not permitted to enlarge those issues or compel an alteration of the nature of the proceeding."). Defendant "agree[s] that it would have been improper for Oman Fasteners to have

---

(2015), and *PAO Severstal v. United States*, 41 CIT __, 219 F. Supp. 3d 1411 (2017) are sufficiently different on their facts to be of little assistance here.

tried to raise the claims it seeks to raise here as cross-claims in *Mid Continent*." Def.'s Resp. Pl.'s Submission Resp. Ct. Order at 2.

The Government's solution to the problem would be that "if Commerce, upon remand [in *Mid Continent*], calculates a positive dumping margin for Oman Fasteners," then "Oman Fasteners could challenge 'other relevant portions of Commerce's existing [Final Results], *so long as they survive Commerce's remand and contribute to the basis of the [  ] order' by filing a summons within thirty days after the publication of [the] new dumping margin*." Def.'s Resp. Pl.'s Submission Resp. Ct. Order at 3 (emphasis added) (quoting *PAO Severstal v. United States*, 41 CIT __, __, 219 F. Supp. 3d 1411, 1416 (2017)). In other words, Defendant suggests that if Plaintiff were to receive a positive margin on remand in the *Mid Continent* case, it could possibly bring a new, separate lawsuit challenging that margin. This cumbersome procedure is simply not in line with modern ideas of efficient adjudication of cases. That is, this kind of piecemeal litigation is something courts have striven to avoid. *See, e.g.*, *Smith v. Gober*, 236 F.3d 1370, 1372 (Fed. Cir. 2001) (concluding that, "in the interests of judicial economy and avoidance of piecemeal litigation," plaintiff's claims should be appealed together where "underlying facts of the . . . claims are . . . intimately connected"); *Since Hardware (Guangzhou) Co. v. United States*, 38 CIT __, __, 991 F. Supp. 2d 1319, 1321-22 (2014) (denying motion to sever cases that had been consolidated because doing so would "promot[e] uncertainty, delay, and expense . . . by forcing the parties to appeal and defend identical issues arising out of the same administrative proceeding in separate appeals, each on their own track"); *Papierfabrik August Koehler AG v. United States*, 36 CIT 1632, 1637 (2012) (not reported in Federal Supplement) (denying motion for partial stay to avoid "delay and extend[ed] proceedings through piecemeal litigation and appellate reviews").

Fifth, and most importantly, Plaintiff's claims would be sufficient for it to have standing were its claims being heard under the procedures of the Declaratory Judgment Act. As noted, the Declaratory Judgment Act is a procedural law only. It created no cause of action, nor did it define any new injuries. Thus, any case brought under the Act must obtain Article III standing in the identical fashion of any other case brought before the federal courts.

The law of declaratory judgment, as developed, has four general prerequisites for a case to be heard, *i.e.*, (1) adverse parties, (2) who have an interest in a disputed legal right, (3) whose claims to that right are capable of being adjudicated by the court, and (4) whose rights can be determined in a final judgment. *See Md. Cas. Co.*, 312 U.S. at 273 (citing *Aetna Life Ins. Co.*, 300 U.S. at 239-42) ("Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment."); *see also MedImmune*, 549 U.S. at 127.

Here, there is little doubt that Plaintiff's claims would survive scrutiny under the four tests and that its rights can be established by the court: (1) the parties are adverse both in this case and with respect to Oman Fasteners' particular claims, (2) there is a dispute over the proper application of the antidumping law to the facts on the record of the administrative review, (3) the adjudication of the meaning of the law is within this Court's competence, and (4) this Court can issue a binding judgment with respect to the meaning of that law for purposes of this case.

It is, of course, true that, here, as in many declaratory judgment cases, the injury is something that may take place in the future. Because this injury may take place in the future, Defendant says it is too speculative to support Article III standing. Certainty of future injury, however, is not required to satisfy Article III. *See Associated Indem. Corp. v. Fairchild Indus.,*

*Inc.*, 961 F.2d 32, 35 (2d Cir. 1992) (citation omitted) ("[L]itigation over insurance coverage has become the paradigm for asserting jurisdiction despite future contingencies that will determine whether a controversy ever actually becomes real."). Remands are hardly unknown in the Court of International Trade. Indeed, the order that resulted in the administrative review that is the subject of Oman Fasteners' case was remanded, and the results of that remand are now on appeal. *See Mid Continent Steel & Wire, Inc. v. United States*, 41 CIT __, 203 F. Supp. 3d 1295 (2017). Nor is it unknown for dumping margins to change for parties and non-parties to an antidumping lawsuit. Commerce's legal interpretation, of which Oman Fasteners complains, could affect the company's margin should there be a remand. Indeed, these interpretations appear to be ones that Commerce has made before (witness the Appeal presently before the Federal Circuit) and is likely to make again. Thus, while the injury that might befall Oman Fasteners is not imminent, it is not more remote than those found to fall within Article III in other contexts.

Taking its allegations and arguments together, and drawing all reasonable inferences in favor of Plaintiff, Oman Fasteners has demonstrated a sufficiently non-speculative threat of injury resulting from Commerce's actions that is enough to establish constitutional standing. In reaching this conclusion the court is addressing the sole justiciability claim raised by Defendant, *i.e.*, that the absence of a positive dumping margin is a bar to standing in an antidumping case. It reaches no conclusion with respect to other matters touching on justiciability.

Because the goal of judicial economy will be advanced by consolidation here, Plaintiff's case will be consolidated with *Mid Continent* and stayed pending the final outcome of the Appeal.

**CONCLUSION**

Based on the foregoing, Defendant's motion to dismiss for lack of subject-matter jurisdiction is denied, and Plaintiff's motion to consolidate this action with lead case *Mid Continent Steel & Wire, Inc. v. United States*, Court No. 18-00235, and to stay this action pending the final outcome of the Appeal is granted. This action shall be consolidated *sub nom Mid Continent Steel & Wire, Inc. v. United States*, Consolidated Court No. 18-00235, and subjected to the stay order currently in place in Court No. 18-00235, ECF No. 31. Judgment shall be entered accordingly.

                                                /s/ Richard K. Eaton

                                                Richard K. Eaton, Judge

Dated:   August 8, 2019
         New York, New York